UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-20521-WILLIAMS/REID

BARBARA ROMAY DIAZ,

    Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

    This matter is before the Court on Barbara Romay Diaz's ("Plaintiff") Motion for Summary Judgment and Defendant Kilolo Kijakazi, Acting Commissioner of Social Security's ("Defendant") Motion for Summary Judgment [ECF No. 12, 16]. These motions were referred to the Undersigned by the Honorable Kathleen M. Williams for a Report and Recommendation. [ECF No. 6]. For the reasons stated below, the Undersigned **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's ("ALJ") decision be **AFFIRMED**.

**I.    PROCEDURAL BACKGROUND**

    Plaintiff appeals the denial of her application for Supplemental Security Income ("SSI"). Plaintiff filed the SSI application on December 13, 2019, alleging an onset date of December 1,

1

2017. [R. 20].[1] Following the denial of her claim at the initial and reconsideration levels, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). [R. 20]. A hearing was held on July 7, 2022, before ALJ Clara H. Aranda. [R. 20, 30]. Plaintiff was represented by counsel, and both Plaintiff and a Vocational Expert ("VE") testified at the hearing. [R. 20]. On August 11, 2022, the ALJ issued a decision, finding Plaintiff was not disabled under sections 1614(a)(3)(A) of the Social Security Act. [R. 30]. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied her request for review. [R. 6]. Plaintiff now seeks judicial review of the ALJ's decision, and both Parties moved for summary judgment. [ECF No. 12, 16]. Plaintiff has exhausted her administrative remedies, and the case is ripe for review under 42 U.S.C. §1383(c).

## II.    STANDARD OF REVIEW

### A. Legal Principles

A district court's review of the Commissioner's decision is limited. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). This court must determine only whether the decision as a whole is supported by substantial evidence in the record. *Id.* Substantial evidence is defined in this context as relevant evidence that a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 F. App'x. 861, 862 (11th Cir. 2011). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

If the Commissioner's decision is supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at 1210. The

---

[1] All references to "[R. __]" are to the record of the administrative proceeding filed by the Commissioner at ECF No. 9.

reviewing court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.* This restrictive standard of review, however, applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### B. Regulatory Framework

A claimant must be "disabled" to be eligible for social security benefits. 42 U.S.C. § 1382. A claimant is disabled if he is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment must be supported by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Claimant bears the burden of proving that she is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security regulations outline a five-step sequential evaluation process for deciding whether a claimant is disabled: (1) whether she is currently engaged in substantial gainful activity; (2) whether she has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments; (4) whether she can perform his past relevant work despite his impairments; and (5) whether she can perform other work found in

the national economy. *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

## III.   THE RECORD

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before the ALJ in July 2022. [R. 51]. She was 51 years old at the time and 49 years old when she filed her application. [R. 29]. She has a high school education and she last worked in 2014 as a cook at a McDonald's restaurant. [R. 25, 53]. Plaintiff alleged disability due to mental problems, bipolar 2, depression, anxiety, and chronic anemia. [R. 307]. Plaintiff testified she can drive and has a valid driver's license. [R. 53]. She takes care of her children, prepares her own meals, and does laundry. [R. 64]. She testified that she drives her children to and from school and shops for groceries about once per week. [R. 63–64, 335].

### B. Medical Records

#### i.   2019 Homestead Cancer Institute Physical Examinations

Plaintiff began visiting the Homestead Cancer Institute in March 2019 to receive iron infusions to treat iron deficiency anemia. [R. 398]. During her October 2019 and November 2019 visits Plaintiff complained of general tiredness but commented she felt "very well." [R. 401, 403]. Her behavior was normal and there was no observed anxiety or depression. [R. 401, 403]. In December 2019, Plaintiff reported "feeling good after [the infusion] treatment," and the medical provider noted she remained "alert and calm throughout the course of treatment." [R. 400].

#### ii.   2019-2020 Homestead Behavioral Clinic Examinations

Plaintiff visited the Homestead Behavioral Clinic for multiple consultations beginning in October 2018. [R.853–96]. She reported in December 2019 feeling overwhelmed as a single mother of two boys, ages twelve and thirteen years old. [R 418]. She reported experiencing

4

auditory hallucinations, but the treatment notes indicated she was well groomed, cooperative and maintained good eye contact. [R. 419–20]. She was advised about the benefits of medication and encouraged to notify her medical provider about any changes. [R. 420]. In January 2020, she appeared tearful and hyperverbal but confirmed some improvements with sleep and mood swings. [R. 434]. She also reported decreased auditory hallucinations with her medication, Latuda, and demonstrated fair insight and judgment and intact memory. [R. 435].

In February 2020, Plaintiff appeared anxious and tearful when recounting a distressing event, but reported improved mood control with Latuda. [R. 741]. In April 2020, she reported cutting her Latuda medication in half because it made her feel nauseated. [R 797]. She reported hearing voices again but denied any current auditory or visual hallucinations. [R. 798].

Between February 2020 and September 2020, Plaintiff denied suicidal or homicidal ideations. [R. 784, 788, 792]. She demonstrated depressed and anxious mood and loud, pressured speech, but treatment notes throughout those months repeatedly indicated she appeared well-groomed, cooperative, and usually maintained a "goal-directed thought process." [R. 742, 794]. In March 2020, Plaintiff visited the Homestead Cancer Institute and again displayed normal orientation and alertness and reported feeling "very well." [R 781, 829].

    iii.    2022 Treatment Notes[2]

Plaintiff had a consultation at the Homestead Cancer Institute in January 2021. [R 820]. The physical examination was "within normal limits" and the treatment notes indicated "no anxiety, no depression, normal behavior" next to the "psychiatric/mood" line. [R. 27, 821, 910].

Mental status examinations between January 2022 and April 2022 indicated Plaintiff sometimes displayed a depressed or anxious mood. [R. 853, 882]. She reported feeling

---

[2] The ALJ noted there appears to be a significant gap in mental health treatment between September 2020 and January 2022. [R. 27].

5

"overwhelmingly depressed" in January 2022 and mentioned she had not taken Latuda in over a month. [R. 882]. The treating nurse, Advanced Registered Nurse Practitioner ("ARNP") Katheryn Fernandez-Paul, indicated Plaintiff would get samples of Latuda at the office because lack of medication was likely the cause of Plaintiff's deterioration. [R. 882].

In February 2022, Plaintiff described feeling better since the increase in Latuda dosage. [R. 877]. In June 2022, Plaintiff showed anxious mood and ruminative thought process, but all other findings appeared within normal limits [R. 856–57].

### C. State Agency Medical and Psychological Consultants

Plaintiff was examined in March 2020 by John Gabriel, M.D. for a state agency disability determination at the initial level. [R 75, 85]. Dr. Gabriel concluded Plaintiff was not disabled and could perform work at a full range of medium exertional level. [R. 81, 83, 84]. The determination at the reconsideration level by Loc Kim Le, M.D., noted no changes with the initial determination that Plaintiff could perform work at a medium exertional level. [R 87, 95]. The medical consultant assessments were generally consistent with the treatment notes showing a history of depression, bipolar 2, and anxious mood. [R 75, 87].

### D. ARNP Katherine Fernandez-Paul

Katherine Fernandez Paul, a registered nurse at Homestead Behavioral Health, treated Plaintiff during the six-month period of January 2022 and June 2022. [R 853–80]. In June 2022, Ms. Fernandez Paul completed a "Medical Assessment of Ability to do Work-Related Activities (Mental)" form regarding Plaintiff. [R 851]. Ms. Fernandez-Paul opined that Plaintiff had no ability to deal with work stress and had poor ability to deal with the public, relate to co-workers, maintain attention, or function independently. [R. 851]. She also opined that Plaintiff had poor ability to behave in an emotionally stable manner, relate predictably in social situations, or

demonstrate reliability. [R. 851]. Regarding Plaintiff's ability to follow instructions, Ms. Fernandez-Paul indicated the following:

**II. MAKING PERFORMANCE ADJUSTMENTS**
Check the blocks in the table representing the individual's ability to adjust to a job, and complete item #4.

| Ability | Unlimited | Good | Fair | Poor | None |
|---|---|---|---|---|---|
| 1. Understand, remember and carry out complex job instructions | | | X | | |
| 2. Understand, remember and carry out detailed, but not Complex job instructions | | | | X | |
| 3. Understand, remember and carry out simple job instructions | | | | X | |

[R. 852]. Ms. Fernandez-Paul further noted that Plaintiff became easily overwhelmed and had trouble with multiple-step instructions. [R. 852].

### E. The ALJ's Findings and Decision

The ALJ found that Plaintiff had the severe impairments of bipolar II disorder, generalized anxiety disorder, post-traumatic stress disorder, panic disorder, and obesity. [R. 22]. The ALJ found the assessments of the State agency consultants generally consistent with the record and persuasive to the extent consistent with the RFC. [R. 27]. When assessing the medical evidence, the ALJ noted that Plaintiff exhibited a depressed or anxious mood, but appeared oriented to all spheres. [R. 27]. Additionally, the ALJ noted that Plaintiff had no recent hospitalizations for emergency crisis stabilization. [R. 28]. The ALJ did not find the opinion of ARNP Fernandez-Paul persuasive because it was internally inconsistent and inconsistent with the record as a whole. [R. 28]. Further, the ALJ found that the conclusion that Plaintiff had almost no abilities in multiple areas of functioning was simply not supported by the treatment notes. [R. 28].

Ultimately, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. pt. 404, subpart P, appendix 1. [R. 23]. Next,

the ALJ determined Plaintiff had the RFC to perform medium work, as defined in 20 C.F.R. § 416.967(c), with the following additional limitations:

> [She] must avoid concentrated exposure to hazards. She can understand and remember simple instructions and perform simple routine and repetitive tasks. She can make simple work-related decisions. The claimant can interact frequently with supervisors and interact occasionally with coworkers and the general public. She can adequately adapt to simple, gradual changes in the workplace.

[R. 24].

Finally, the ALJ found Plaintiff had no past relevant work but that she could unskilled work available in significant numbers in the national economy. [R. 29].

## IV.   DISCUSSION

### A. Whether Substantial Evidence Supports the ALJ's Finding that ARNP Fernandez-Paul's Opinion is Unpersuasive.

*Argument*

Plaintiff argues the ALJ erred in rejecting ARNP Fernandez-Paul's opinion that Plaintiff has multiple work-related mental limitations. [ECF No. 12]. Plaintiff claims the ALJ failed to properly articulate her findings regarding the consistency and supportability of the ARNP's medical opinion. Regarding consistency, Plaintiff argues that the ALJ did not assess the ARNP's opinion against other medical and nonmedical sources. Notably, the ALJ did not fully explain her conclusion that "the [ARNP's] opinion is unpersuasive because it was not internally consistent nor consistent with the record." Plaintiff points, for instance, to the ALJ's finding that the ARNP "checked off on the form that the claimant has fair ability to remember and carry out complex instructions, yet she also checked off that the claimant has a poor ability to understand, remember, and carry out simple instructions and detailed but not complex instructions." [ECF No. 12 at 5]. Plaintiff contends that the ARNP's inconsistency could be ascribed to a clerical mistake and the

8

ALJ should have tried to clarify the matter with the ARNP before undermining her opinion. Plaintiff argues the ARNP likely made a mistake because it does not make sense that she would conclude that Plaintiff had a fair ability to carry out complex job instructions but a poor ability to carry out simple job instructions.

Regarding supportability, Plaintiff argues the ALJ's findings are superficial and the ALJ should have referred to diagnostic techniques or data collection procedures. Moreover, the ARNP's opinion is supported by her treatment notes that Plaintiff demonstrated symptoms such as "fidgety psychomotor activity," "scattered thought process," and "impaired abstract thinking." [*See id.* at 6]. Plaintiff claims the treatment notes correspond to 18 treatment visits over a 5-year period. In arguing that the ALJ erred in evaluating the ARNP's opinion, Plaintiff appears to emphasize that the ARNP was Plaintiff's treating psychiatrist or the equivalent of her treating physician. Finally, Plaintiff contends that some benign clinical findings alone should not serve as a basis to completely disregard the ARNP's opinion.

Defendant responds that although the ALJ is required to articulate consideration of the factors, the ALJ is not required to use "magic language." The ALJ meets the articulation requirement if the evaluation addresses the substance of the factors, which is what happened in this case. [ECF No. 16 at 7]. The ALJ referred to objective findings by other medical services when she determined that Ms. Fernandez-Paul's opinion was too extreme. Defendant refutes Plaintiff's claim that the treatment notes correspond to 18 treatment visits, asserting that only 6 of the 18 treatment notes referred to by Plaintiff reflect treatment with Ms. Fernandez-Paul. The other 12 treatment sessions Plaintiff refers to (ECF No. 12 at 6–7) were provided by other medical providers. Significantly, Ms. Fernandez-Paul treated Plaintiff for less than 6 months for all 6 of Plaintiff's treatment sessions. [*Id.* at 9].

*Analysis*

Because Plaintiff's claims were filed after March 27, 2017, the ALJ was required to consider the medical opinion evidence and prior administrative medical findings in Plaintiff's case in accordance with 20 C.F.R. § 416.920c. Under this regulation, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a); *see also Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 498 (11th Cir. 2021) (noting that the requirement to assign weight to medical opinions has been omitted from the revised regulation). Rather, the ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings based upon five factors: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict' the opinion" or finding. *Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a); *see also Medina v. Kijakazi*, No. 21-CV-62281, 2022 WL 6572349 (S.D. Fla. Aug. 23, 2022).

Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520cI(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520cI(2).

Here, the ALJ articulated how persuasive she found the treating physicians' opinions, including the ARNP's. The ALJ correctly noted that the ARNP's assessment (*i.e.*, the checkmarks on the medical assessment form) regarding Plaintiff's ability to follow instructions were inconsistent. Indeed, it is unclear why the ARNP marked on the form that Plaintiff had a *fair* ability to follow complex instructions but then indicated that Plaintiff has a *poor* ability to follow detailed but not complex instructions. Plaintiff cites no authority, however, that the ALJ was required to resolve this inconsistency or seek clarification from the ARNP.

At most, *Ybarra v. Commissioner of Social Security*, provides some guidance on the completeness of the record. 658 F. App'x 538 (11th Cir. 2016). There, the claimant argued that the ALJ failed to develop a full and fair record by not ordering a consultative examination. *Id.* at 543. The Eleventh Circuit rejected this argument, explaining that, although "the ALJ has an obligation to develop a full and fair record," the ALJ "is not obliged to order a consultative examination when the record contains sufficient evidence to support a determination." *Id.* (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001).

Here too, the record contains sufficient evidence to support the ALJ's determination that the ARNP's opinion was inconsistent. No further evidentiary gathering was required. Contrary to Plaintiff's contention, the ALJ did not conclude the opinion was inconsistent based solely on the ARNP's selections on the assessment form. The ALJ also noted that the ARNP's conclusions were inconsistent with the record as a whole, writing that the opinion was "overly dire compared to claimant's examination notes in the medical evidence of record." [R. 28]. The ARNP's opinion indicated Plaintiff had poor to *no* abilities in multiple areas of functioning, but the record reflected Plaintiff "mainly [had] some difficulties with anxiety." [R. 28].

The ALJ cited to several exhibits, including ARNP's progress notes from February 2020 (R 742), June 2022 (R. 856–57), April 2022 (R. 863), March 2022 (R. 868), February 2022 (R 873), and January 2022 (R 883). [R. 28]. Altogether, the notes indicate that Plaintiff showed symptoms of depression and anxiety, but her thought process was "goal directed," her speech "pressured" but "coherent," her judgment and eye contact "good," and her memory "intact." *See, e.g.*, [R. 742, 868]. The ALJ's summary of the records from other sources makes clear that the ALJ considered the consistency of such records against the ARNP's opinion before making her consistency finding. [*See* R. 26–27].

Regarding supportability, the ALJ determined the opinion was not supported by the underlying treatment notes. [R. 28]. The ALJ relied on several exhibits, including treatment notes from January 2020 (R 786), May 2020 (R 730), and June 2022 (R 856). [R 28]. Treatment notes from the Homestead Behavioral Clinic from June 2022, for instance, indicated that Plaintiff showed "normal behavior." [R. 823]. And notes from December 2019 (R. 399), February 2020 (R 830), June 2020 (R. 771), and November 2020 (R. 824) all stated that "[p]atient was alert and calm throughout the course of treatment. Patient refers to feeling good after treatment." The ALJ additionally pointed to notes indicating Plaintiff was "cooperative," maintained "good" eye contact, appeared "well-groomed," and demonstrated "good" impulse control.

Plaintiff's contention that the supportability analysis requires references to diagnostic techniques and data collection procedures is flawed. "The supportability of [a medical] opinion turns on whether [the medical provider] provided relevant objective medical evidence and supporting explanations to support his [or her] opinion." *Elshater v. Kijakazi*, No. 22-CV-60466, 2022 WL 14890164, *6 (S.D. Fla. Oct. 6, 2022), *report and recommendation adopted*, No. 22-60466-CIV, 2022 WL 14813795 (S.D. Fla. Oct. 26, 2022). A review of the exhibits cited by the

ALJ indeed shows that Plaintiff displayed "normal behavior" and abilities such as staying alert and staying calm. The ARNP's treatment notes, on the other hand, contain no explanations to support statements that Plaintiff cannot follow multiple-step instructions or retain information (R. 852). Further, Defendant correctly notes that the ARNP treated Plaintiff for less than 6 months for all 6 of Plaintiff's treatment sessions. *See* [R. 880, 875, 865, 860, 853]. The treatment notes corresponding to 2020 were all taken by ARNP Sylma Millares, and not Ms. Fernandez-Paul. [*See, e.g.*, R. 804].

In sum, the ALJ followed the applicable regulation and provided a detailed rationale to support her determinations. Because Plaintiff has failed to show that the ALJ's determinations are not supported by substantial evidence, and because this Court cannot substitute its judgment for the ALJ's judgment or reweigh the evidence, the ALJ's evaluation of the ARNP's opinion must stand. Arguments that the ALJ should have given greater deference to Ms. Fernandez Paul's opinion because she was Plaintiff's "treating physician" are meritless. The cases Plaintiff relies on are inapplicable because they involved regulations that applied to claims made before March 27, 2017. *See, e.g.*, *Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094 (11th Cir. 2021); *Schink v. Commissioner of Social Security*, 935 F.3d 1245 (11th Cir. 2019); *Castro v. Acting Commissioner of Social Security*, 783 F. App'x 948 (11th Cir. 2019).

**2. Whether the RFC Finding Is Supported by Substantial Evidence.**

*Argument*

Plaintiff argues the ALJ erred in finding that she has the RFC to perform medium work. She contends that the ALJ did not consider all of the record evidence, including Plaintiff's daily activities, lay evidence, recorded observations, and medical source statements. She claims the ALJ erred at step three of the sequential evaluation because she failed to properly evaluate Paragraph

B criteria from the Listing of Impairments. The ALJ did not clearly articulate her conclusions as to each sphere of functioning when making the following statement: "claimant has a moderate limitation in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing oneself." [R. 23]. According to Plaintiff, a plain reading of that language suggests the ALJ did not determine evaluate the "adapting or managing oneself" criteria. [ECF No. 12 at 8]. Because the list is connected with an "or" instead of an "and," Plaintiff says, there is no way to ascertain which domain or domains the ALJ intended to qualify as "moderate." Plaintiff concludes that a proper RFC assessment would have established that she is far more limited than the ALJ concluded and is "incapable of performing any full-time, competitive capacity on a sustained basis." [ECF No. 12 at 16].

Defendant responds that the ALJ considered all evidence in assessing Plaintiff's RFC, including her testimony, her medical records from 2019 to 2022, Plaintiff's statements to her medical providers, the ARNP's opinion, and prior administrative findings by the state agency medical consultants and psychological consultants. The ALJ considered the four broad areas of mental functioning set out in the regulations for evaluating mental disorders and in the Listing of Impairments, known as the "paragraph B" criteria. The ALJ's use of "or" instead of "and" is a typographical and harmless error. [ECF No. 16 at 17]. Further, Plaintiff has not shown that her impairments caused additional limitations beyond those in the ALJ's RFC finding. The mental status findings and other evidence, as discussed by the ALJ, provide substantial evidence to support the ALJ's assessment of Plaintiff's work-related mental limitations.

*Analysis*

The RFC is the ALJ's assessment, based on all relevant evidence, of a claimant's ability to work despite his or her impairments. *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997). "Error

arises only when the ALJ rejects medical evidence from the RFC 'without (at least) providing a good reason for doing so.'" *Felker v. Comm'r of Soc. Sec.*, No. 2:22-CV-221-KCD, 2023 WL 2986246, at *5 (M.D. Fla. Apr. 18, 2023) (quoting *Sneed v. Comm'r of Soc. Sec.*, No. 6:13-CV-1453-ORL-TBS, 2015 WL 1268257, at *7 (M.D. Fla. Mar. 19, 2015)). "The ALJ is not required to specifically discuss each piece of evidence so long as the decision shows that [s]he considered the claimant's condition as a whole." *Robinson v. Kijakazi*, No. 21-21603-CIV, 2022 WL 18155656, at *2 (S.D. Fla. Dec. 21, 2022), *report and recommendation adopted sub nom. Robinson v. Comm'r of Soc. Sec.*, No. 21-21603, 2023 WL 136556 (S.D. Fla. Jan. 9, 2023) (quoting *Alvarez v. Comm'r of Soc. Sec.*, 848 F. App'x 823, 824 (11th Cir. 2021)).

> When a claimant presents a claim of a mental impairment, the ALJ must apply the special technique set forth in the Psychiatric Review Technique Form ("PRTF") at Step Two. *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005). The ALJ must assess a claimant's degree of functional limitation in four areas, including a claimant's ability to: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ's decision "must include a specific finding as to the degree of limitation in each of the functional areas" identified. *Id.* §§ 404.1520a(e)(4); 416.920a(e)(4) . . ..

*Loydd v. Comm'r of Soc. Sec.*, No. 6:22-CV-15-ACC-EJK, 2023 WL 2931152, *2 (M.D. Fla. Mar. 1, 2023).

Here, the ALJ properly addressed each of the broad functional areas of mental functioning from the disability regulations for evaluating mental disorders in the paragraph B criteria. The ALJ wrote:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked

>limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
>The claimant has a moderate limitation in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing oneself. The claimant is consistently oriented to four spheres (Ex. 8F/8, 11F/9, 13F/4, 13F/11, 13F/16, 13F/21, 13F/26, 13F/31). She demonstrates intact memory and abstract thinking, as well as fair to good insight, judgment, and impulse control (Ex. 7F/15, 13F/4-5, 13F/11, 13F/16, 13F/21, 13F/26, 13F/31). Her intelligence appears to fall in the average range (Ex. 13F/5, 13F/11, 13F/16, 13F/21, 13F/26, 13F/31). The claimant frequently exhibits a goal-directed thought process and unremarkable thought content (Ex. 13F/11, 13F/16, 13F/21, 13F/26, 13F/31). She often displays normal psychomotor activity and coherent speech (Ex. 13F/4, 13F/11, 13F/16, 13F/21, 13F/26, 13F/31).
>
>The claimant's behavior is generally normal (Ex. 11F/2-4, 14F/14). She appears alert and calm (Ex. 2F/2-3, 4F/1-4, 4F/10-14, 9F/1-2, 9F/6-7, 11F/5, 11F/11-12, 11F/14-15). She regularly denies suicidal or homicidal ideations (Ex. 10F/13, 10F/17, 10F/21, 10F/25, 10F/29, 10F/33,13F/2, 13F/9, 13F/14, 13F/19, 13F/24, 13F/29). The claimant is cooperative and maintains good eye contact (Ex. 7F/14-15, 13F/4, 13F/11, 13F/16, 13F/21, 13F/26, 13F/31). She appears well groomed (Ex. 7F/14, 10F/15, 10F/19, 10F/23, 10F/27, 10F/31, 10F/33, 13F/4, 13F/10, 13F/15, 13F/20, 13F/24, 13F/30).
>
>The claimant takes care of her children, prepares her own meals, and does laundry (Ex. 5E/2-3,7E/2-3). She transports her children to and from school (Ex. 7E/2, hearing testimony). The claimant can drive a car and go out alone (Ex. 7E/5, 9E/2, hearing testimony). She shops for groceries about once per week (Ex. 7E/5, 9E/2). She can pay bills, count change, handle a savings account, and use a checkbook (Ex. 7E/5, 9E/2). Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

[R. 23].

A review of these findings and the cited exhibits show that the ALJ thoroughly and specifically addressed each of the broad functional areas of mental functioning. The ALJ explained how she reached her conclusion that Plaintiff's impairments were "moderate" and did not cause "marked" or "extreme" limitations. Moreover, the record as a whole shows Plaintiff's mental health symptoms only moderately interfered with the four functional areas, that is, to "understand,

remember or apply information; interact with others; concentrate, persist, and maintain pace; *and* adapt or manage oneself."

Plaintiff contends that the ALJ did not address the last area of functioning of "adapting or managing oneself" because she did not clearly articulate the severity of Plaintiff's impairments. In context, however, the ALJ appeared to be referring to all spheres of functioning when she wrote that Plaintiff's limitations were "moderate." The exhibits the ALJ cited indeed show instances when Plaintiff showed the ability to adapt and manage herself, such as: interacting with healthcare personnel, shopping for groceries at least once a week, maintaining a savings account, regularly driving her kids to and from school, and being able to stay alert and calm.

Ultimately, the ALJ's discussion supporting her RFC determination shows that she considered all of Plaintiff's impairments, mental and physical ones. The ALJ found that Plaintiff's mental impairments did not limit Plaintiff's RFC. In making these findings, the ALJ pointed to Plaintiff's medical records, including multiple treatment notes, and Plaintiff's testimony regarding her daily activities. Further, the ALJ expressly noted that "the limitations identified in the 'paragraph B' criteria are **not** a residual functional capacity assessment . . .." [R. 24] (emphasis added). The ALJ continued the evaluation of the areas of mental functioning in steps 4 and 5. Plaintiff has failed to demonstrate that the ALJ erred at step three of the sequential evaluation or that the RFC is not supported by substantial evidence. *See Bellew v. Acting Com'r of Soc. Sec.*, 605 F. App'x 917, 926 (11th Cir. 2015) (affirming ALJ's determination that claimant's mental conditions did not meet the criteria of paragraph B).

The Court respectfully **RECOMMENDS** that the Commissioner's denial of benefits be **AFFIRMED**.

## CONCLUSION

In conclusion, there is substantial evidentiary support for the ALJ's evaluation of ARNP Fernandez-Paul's opinion and the ALJ's determination of Plaintiff's RFC. It is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment [ECF No. 12] be **DENIED**, the Commissioner's Motion for Summary Judgment [ECF No. 1] be **GRANTED**, and the ALJ's decision be **AFFIRMED**.

Objections to this Report may be filed with the district judge within **FOURTEEN** days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 9th day of February, 2024.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **All Counsel of Record**